IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JEONGAH KIM, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No.  5:12-cv-2190-TMP |
| ) | |
| ALABAMA AGRICULTURAL AND ) | |
| MECHANICAL UNIVERSITY, *et al.*; ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter is before the court on the partial motion to dismiss (doc. 19) filed January 17, 2013, by defendants Alabama Agricultural and Mechanical University ("Alabama A&M"), the Board of Trustees for Alabama Agricultural and Mechanical University ("the Board"), and Andrew Hugine, Jr., and Daniel K. Wims in their official capacities as president and provost, respectively. The plaintiff, Joengah Kim, has not filed any opposition to the motion.[1] The parties have consented to the jurisdiction of the undersigned magistrate judge; accordingly, the court enters this memorandum opinion.

**BACKGROUND**

This action arises from plaintiff's former employment with Alabama A&M, a university with its main campus in Normal, Alabama. Plaintiff, an Asian female whose national origin is

---

[1] An order giving the plaintiff 20 days in which to file any opposition was entered on January 23, 2013. (Doc. 23). No opposition was filed. During a scheduling conference on March 25, 2013, plaintiff's counsel informed the court that he wanted time to respond, and was given 14 days in which to do so. To date, no response or opposition of any kind has been filed.

1

South Korean, was hired as an assistant professor in the Alabama A&M Department of Social Work in 2004. The Board is the entity that operates the university by statutory authority. Hugine is president of the university, and Wims serves as provost; both are sued in their official capacities only.[2] Plaintiff asserts that she was denied tenure and promotion[3] in 2010 and in 2011 on the basis of her gender, race, and national origin, and in retaliation for having filed EEOC charges of discrimination, all in violation of 42 U.S.C. § 2000e *et seq.*, ("Title VII"), and 42 U.S.C. § 1983.

The amended complaint filed January 4, 2013, (doc. 16) sets forth four claims: race discrimination, national origin discrimination, gender discrimination, and retaliation. The discrimination claims recite that she was denied tenure and promotion in 2010 and 2011, based upon her race, national origin and gender. She further asserts that she was retaliated against after

---

2   Plaintiff's counsel filed a motion to amend the complaint again seeking to add Hugine and Wims in their *individual* capacities. The motion to amend (doc. 30) was filed 17 days after the deadline for amending pleadings expired, and a full month after the court held a scheduling conference for the purpose of setting these deadlines. Counsel's "good cause" for the belated filing is "inadvertence" caused by relocating his office. Although the court is aware that motions for leave to amend should be liberally granted, allowing the plaintiff to file a second amended complaint works actual prejudice to the defendants. If allowed, such an amendment would expose defendants Hugine and Wims to *personal* liability for the very first time nine months after the filing of the original complaint and after plaintiff has been granted one opportunity to amend already. Given the history of this case and the fact that the original complaint was filed over nine months ago, and the fact the defendants' motion to dismiss has been fully briefed and taken under advisement, the delay in offering this amendment is not excusable, and, therefore, the motion for leave to amend is DENIED.

3   Plaintiff refers to the adverse employment action as denial of "tenure and promotion." The defendants refer to "tenure or promotion." The exhibits annexed to the amended complaint make clear that tenure decisions and promotion decisions are two separate employment actions. Nonetheless, it appears that the denial of both tenure and promotion occurred once in each of the two academic years. For purposes of the instant motion, it does not matter whether there were multiple denials because the dates of the actions are clear.

filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2010 in that the defendants did not "timely notify plaintiff" of the deadline for reapplying for tenure in February 2011, did not grant her tenure, and applied "stricter scrutiny" to her travel requests after she filed the EEOC charges. Plaintiff seeks injunctive relief, declaratory relief, compensatory damages, punitive damages, attorney's fees, expenses, and costs. The defendants seeks dismissal of all claims against Alabama A&M as an entity, the §1983 claim against Alabama A&M and the individual defendants in their official capacities, and the 2010 gender-based claim on the basis that it is outside the scope of the 2010 EEOC complaint.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action," Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001), or set out in precise detail the specific facts upon which she bases her claim. The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Id. (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A Sept.8, 1981)). The Supreme Court raised the threshold for a sufficient pleading in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007)(rejecting the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that any "conceivable" set of facts supporting relief is sufficient to

3

withstand a motion to dismiss).  The threshold of plausibility is met where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

## DISCUSSION

A.  Alabama A&M: Capacity to be Sued

Alabama A&M first asserts that the plaintiff's claims against the entity identified as the "Alabama Agricultural and Mechanical University" are due to be dismissed because the University does not have the capacity to be sued and, therefore, is not a suable entity itself.  The proper party, defendant asserts, is the Board of Trustees, which is vested with all power to operate the university and all liability for the university.  The court agrees that, pursuant to Alabama Code §§ 16-49-22 and -24 (1975), the Alabama legislature vested the Board with all "duties, liabilities, and responsibilities" that arise from operating the university.  The Eleventh Circuit Court of Appeals has examined the question as it relates to universities created under Florida law and has determined that where the university is not an "independent corporate" entity, it lacks the capacity to be sued in its own name.  United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir. 1987)(examining a comparable state-law scheme).  The Board of Regents, and not the University System of Georgia, similarly was found to be the proper party for purposes of suit under Georgia law, which vested control of the university in a board of regents.  Bradley v. University System of Georgia, 2010 WL 1416862 *5 (N.D. Ga. March 11, 2010).  Like the defendant universities in the Georgia and Florida cases, Alabama A&M is a creation of the state, created by statute and operated by a board of trustees.  Because Alabama A&M is not a

suable entity, it is not a proper party, and plaintiff's claims against the university defendant are due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

B.  Eleventh Amendment Immunity

The defendants further assert that, even if Alabama A&M were an entity subject to such suit, plaintiff's § 1983 claims against the university, the Board, and Hugine and Wims in their *official* capacities are due to be dismissed because the claims are barred by the Eleventh Amendment to the United States Constitution, which prohibits federal courts from exercising jurisdiction over a state when sued by private individuals without the state's consent.  Lassiter v. Alabama A&M University, 3 F.3d 1482, 1485 (11th Cir. 1993), *vacated on other grounds*, 28 F.3d 1146 (11th Cir. 1994)(*en banc*).  It is well settled that state universities in Alabama, and the boards that govern the universities, are state agencies for purposes of Eleventh Amendment immunity.  Harden v. Adams, 760 F.2d 1158, 1173 (11th Cir. 1985)(stating that the Alabama Supreme Court has determined that state universities are agencies of the state), cert. denied, 474 U.S. 1007 (1985); see also Eubank v. Leslie, 210 Fed. Appx. 837, 844-45 (11th Cir. 2006); Harris v. Board of Trustees of the University of Alabama, 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012).

It also is clear that state officials sued in their official capacities are provided immunity from suits seeking damages in a § 1983 case.[4]  Kentucky v. Graham, 473 U.S. 159, 169, 105 S.

---

4   Any claims plaintiff asserts against the official-capacity defendants for prospective injunctive relief are not subject to the Eleventh Amendment immunity.  See Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985).

Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985)("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity"), citing Cory v. White, 457 U.S. 85, 90, 102 S. Ct. 2325, 2328, 72 L. Ed. 2d 694 (1982); Edelman v. Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). Claims for declaratory relief and prospective injunctive relief against Hugine and Wims in their official capacities, however, are not barred by Eleventh Amendment immunity. Although in suits for damages state officials are not "persons" within the statutory language of § 1983, see Will v. Michigan Department of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), they remain subject to prospective injunctive relief as a means for vindicating federal rights. Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908); Virginia Office for Protection & Advocacy v. Stewart, ___ U.S. ___, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011).

An assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the court and is treated as a motion filed pursuant to Rule 12(b)(1). Where the entity asserting the immunity is an arm of the state, and there has been no waiver or express abrogation of the immunity,[5] then the Eleventh Amendment serves as a jurisdictional bar to suit. Accordingly, the motion to dismiss the § 1983 claims on grounds of state sovereign immunity also is due to be granted, and the § 1983 claims for damages against Alabama A&M, the Board, Hugine, and Wims are due to be dismissed. Claims for prospective injunctive and declaratory relief against Hugine and Wims remain pending.

---

5   Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990).

C.  2010 Gender Discrimination Claim

In the amended complaint, the plaintiff contends that she was discriminatorily denied tenure and promotion in both 2010 and 2011 on the basis of race, national origin, and gender. The defendants assert that the gender discrimination claim arising from the 2010 denial (as distinct from the 2011 denial) is unexhausted because plaintiff did not assert gender discrimination in her first or second EEOC charges.[6]

It is well established that the filing of a timely charge of discrimination with the EEOC is an administrative prerequisite to filing suit under Title VII, and that the judicial complaint is limited in scope by the administrative investigation that "can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000), quoting Mulhall v. Advance Sec. Inc., 19 F.3d 585, 589 n. 8 (11th Cir. 1994), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). The prerequisite is not, however, a trap for the unwary. See, *e.g.*, Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277 (11th Cir. 2004)(finding that EEOC charge alleging race and gender discrimination could include a claim for retaliation because the scope of the investigation involved the reasons for the plaintiff's termination, which could be race, sex, "actual, legitimate reasons" or retaliation).

For decades, courts have debated and delineated what information must be included in an EEOC charge in order to provide a plaintiff with the right to litigate his or her employment

---

6   The only charging document that specifically alleges gender discrimination was filed June 20, 2012, and would not timely address the 2010 decision. (Doc. 17, Exhibit 5).

claims.  See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465-66 (5th Cir. 1970).[7]  The only content requirements set forth in the regulations governing the EEOC charge forms are that the charge contain a "clear concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices."  29 C.F.R. § 1601.12(a)(3).  The regulation further provides that a charge "is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b).  In addition, a charge may be amended "to cure technical defects of omissions ... or to clarify and amplify allegations made therein."  29 C.F.R. § 1601.12(b).  The "crucial element" of an EEOC charge is the factual statement set forth on the form.  Evans v. U.S. Pipe & Foundry, Co., 696 F.2d 925, 929 (11th Cir. 1983).  In Sanchez, the court warned that "procedural technicalities" should not be used to bar claims, and specifically refused to hold that "failure to place a check mark in the correct box is a fatal error."  431 F.2d at 462.  The ultimate purpose of the filing of the EEOC charge is "to notify the employer of the allegations made against it" Houston v. Army Fleet Services, LLC, 509 F. Supp. 2d 1033, 1040 (M.D. Ala. 2007).

It is clear from an examination of the 2011 EEOC charge forms that the plaintiff checked the boxes only for race, national origin, and retaliation.  (Amended Complaint, doc. 17, Exhibit 1).  The factual allegations, however, describe the denial of tenure and promotion for which she was considered in July 2010.  It is that single act by the employer that is challenged in the two charges.  Her failure to allege that she was denied tenure and promotion on the basis of her

---

7   In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all decision handed down by the

gender does not describe any separate or new "act" – it merely attributes a different motive to the same act by the employer.  The factual allegation is that the male, African-American decision-maker discriminated against her by denying her tenure and promotion.  The EEOC investigation that must follow such a charge, even if couched in terms of discrimination based on race or national origin, necessarily involved an investigation of the defendants' motives in denying tenure to plaintiff, while granting tenure to other faculty members.  In addition, even if the scope of the charge was limited by the specific references to race and national origin, the plaintiff sufficiently amended her charge by specifically stating, in writing, that she believed the same action had been violative of Title VII on the basis of her gender and that she wanted to amend her charge to include gender discrimination.  (Doc. 17, Exhibits 3 and 4).  Accordingly, the court cannot determine as a matter of law that the 2010 gender claim is beyond the scope of the EEOC complaint, and the motion to dismiss the 2010 gender claim is due to be denied.

## CONCLUSION

Based upon the foregoing, the motion to dismiss filed by the defendants (doc. 17) is due to be granted in part and denied in part.  The motion will be granted as to all claims against the entity the "Alabama Agricultural and Mechanical University," which is not a suable entity.  The motion will be granted as to all § 1983 claims for *damages* against all defendants.  The motion will be denied as to plaintiff's claims for prospective injunctive and declaratory relief against defendants Hugine and Wims in their official capacities, and denied as to plaintiff's Title VII

---

Fifth Circuit Court of Appeals on or before September 30, 1981.

gender-discrimination claims. A separate order will be entered dismissing the claims as described herein.

DATED the 29th day of April, 2013.

_____

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE